Demirayak v. City of New York Last case on our calendar Right here, I think. Just so the judges can see it. I could probably reach it. Yeah. And then we'll flip them around at some point. We'll flip them around at some point. Not yet. You might as well flip them. Which one do you want first? This one. Okay. Thanks. Okay. All right, Mr. Demirayak. How are you? How are you, Your Honor? Good morning, Your Honors. May it please the Court. My name is Keener Demirayak. I'm the Plaintiff Appellant in this action. I'm representing myself. I reserve two minutes for rebuttal. Before I get into the bulk of my argument with Judges Cabranes and Carney, I've heard six months ago. Welcome to the case, Judge Lynch. I just wanted to go over what the narrowest ruling that this Court could make without reaching unnecessary issues before I delve into some of the more meritorious issues here. The narrowest ruling that this Court can issue would be an order vacating the District Court's denial of the preliminary injunction and remanding for a proper fact-finding hearing so that a proper grant or denial of the motion could be issued. Now, as the record below, is that . . . Your application for a permanent injunction is still pending in any event. Yes, Your Honor. Regardless of what we do. Yes. And the application here was predominantly . . . Is that truly the narrowest ruling? Couldn't the narrowest ruling potentially be sending it back, requiring the District Court to obtain an answer or a response of pleading from the state and city before ruling? Absolutely. And I think the most important thing for Your Honors to realize is the procedural posture of this case. So, since December, answers have been interposed by the defendants. There's a motion to dismiss pending by the state. There's discovery has been proceeding. So, the case is moving along at this juncture. And in the District Court, what we're looking for is permanent injunctive relief, full retrofitting of the courthouse, those kinds of things. When I made this motion in October of 2017, I was seeking some temporary accessibility items, which is separate and apart from the ultimate relief, which is for permanent access. And that's why I brought these for demonstration purposes. There are some pieces of equipment that the city has used. I know it's not in the record. It's just for demonstration. That could be considered by the District Court below before we go all the way three years from now with respect to the permanent relief. So, they have a lift that- Why do you say three years from now? Just my expectation of how long the litigation could take, how long it would take them to present plans and all of what's required to do construction. But for temporary access, in my complaint and in my papers, you're talking about in the jury coordinating part where you go to pick a jury. There's a six inch step. That could easily be remedied by a temporary ramp, which costs $300, and the city has about 1,300 of them since disabled in action. It's a very easy fix that could be done. Now, I'm not asking your honors to consider that at this first stage. But the District Court should have considered that before denying it. Isn't that- I mean, you said very quickly, I know this isn't in the record, but whose burden is it to present at least some evidence that there are reasonable accommodations possible at this stage? Because as I read the affidavit, it makes a very compelling case that there are places in this courthouse that are not accessible, but it doesn't say very much about what it would cost or what the fixes are that would be doable here. Absolutely. Thank you for your question, Judge Lynch. With respect to that, the plaintiff does have the burden initially to set forth a plausible accommodation that doesn't exceed its benefit. The cost doesn't exceed the benefit to the public. But on this motion, I initially made my papers with the expectation a hearing would be held where those issues would be dealt out. So I'm not- The narrowest ruling would be to affirm but without prejudice to your submitting a new application that provided some of that information. Sure. That would be a valid ruling if the District Court's reasoning on the decision relied upon that. The reasoning that the District Court held is that I'm seeking relief prematurely before the record's being developed, and that typically in ADA cases, this relief is not valid. Those findings, those reasonings are erroneous. It's an abuse of discretion. It's an error of law. It's an error of fact. It's an error of the substance in the form of the decision. Sometimes you can get relief that is a provisional grant of what you would get at the end of the case because it's been a compelling showing that you're going to win and that there's irreparable injury going on every day while the situation remains unremitied. Absolutely, Judge Lynch, and that was the main reason why this appeal was filed. We wouldn't have been here on this appeal if the judge has held a hearing. If he would have denied it after hearing and found the facts, I probably would have been okay with that. But to deny it within five hours after it being filed and whether or not it doesn't meet all the requirements, which I don't concede, for an injunction on that or for equitable relief at that stage- The District Court said that you'd fail to meet the heightened standard that would be required for affirmative relief. Would you distinguish between the kinds of relief that you would ask, that is installation of ramps, structural changes, or just, for example, maintaining working restrooms that are accessible? Absolutely, Judge Garney. Thanks for the question. There is a difference between the five elements that I was requesting in the motion. For the purposes of this appeal, I think the plaintiff is willing to abandon the request to have architectural plans done in four months and to not have retaliation from the judges. Plaintiff meaning you. Yes. I was on trial a couple weeks ago. Sorry about that. But as far as first for the signage, the signage, it kind of started up everything where I don't know where to go for the bathroom. And if you have a courthouse that's not completely accessible, the ADA requires you to put up signs that tell you where to go. Up until I complained about that, they didn't have the signs. So you'll go to the bathroom, you'll go to where the sign is, and the bathroom on- Let's start with the second floor. The second floor is- they have a bathroom that is this wide. You can't turn your wheelchair. It doesn't comply with the ADA. So that's what they're using, and it hasn't been working. So I think- As far as the signage issue is concerned, I don't want to divide and conquer because I think the real issue concerns the areas of the courthouse that are plainly inaccessible and that there's at least some reason to think could be inexpensively fixed, at least temporarily. Absolutely. But on some of these other things, with respect to the signage, this is a bit of a moving target. Sure. Because there's some indication that they changed some of the signage, and of course by now you know what the accessible bathrooms are and which ones aren't. So the irreparable injury is, at least as to you personally- For the signs, correct. But for the bathrooms themselves, it is- Am I right in understanding that you had said that it was irregular about which were actually available because they were not kept in working condition? That's correct. So that would be- And you can't necessarily tell, but was there ever a day in which they were all out of commission? Sure. The event in December of 2016, I was looking for bathrooms. I was only able to check the second, fourth, and fifth floors. I was never able to get further up. So I'm not sure if that bathroom was or was not working that day, but the timer went out where I had to go back and my jury panel was waiting for me. So that's in your affidavit. Yes. So it's in the affidavit or it's in the complaint itself. But as far as- Those are accessible. Well, that requires no structural change. That just- Sure. Those bathrooms are from what you can look at from an outside observer. They appear to be ADA compliant. We'll have to do factual development to see if they are. But you can get in and you can turn around. But not the second floor. And I guess maybe I'll waive my rebuttal time. But as far as what you're asking, not every element of my motion seek mandatory relief. There are issues that are prohibitory relief that maintain the status quo. And precisely that would be the maintaining the accessible bathrooms. And I guess I'll just waive my rebuttal for now. If I can go over. As far as mandatory relief, the request to have temporary access is indeed mandatory relief. However, the Eighth Circuit in Layton v. Elder held that a single violation where you can't get up a staircase to attend a court proceeding was enough to require mandatory relief. They had a trial on a hearing where there was an individual who had a hunting license violation. He couldn't get up the staircase. The judge came down, held court outside in the hallway. That single violation was enough for mandatory relief. Okay. You've reserved some time. So let's hear from the other side. Thank you. Good morning, Your Honors. May it please the Court, Scott Eisenman for the State Appellees. The district court properly denied plaintiff's injunction motion. That motion sought to compel defendants to install ramps and design a comprehensive plan for permanent structural modification. Well, that one he just withdrew. So we don't have to worry about that now. But even with respect to the — He asked for something that he was absolutely, totally, completely not entitled to, but also something that he might have been entitled to. Does the motion get denied properly? The motion is properly denied if on its face it doesn't even articulate the proper standard for the motion, which is precisely what the district court found here. It found that the installation of ramps was mandatory relief that required a heightened standard that plaintiff — Yeah, that's not what the district court said, though. The district court said you can't get that, period, not that he stated the wrong standard for when you can get it, right? Well, the district court's decision does say that the proper standard wasn't even identified in plaintiff's papers, and it sets forth the proper standard citing this court's decision in Tom Doherty. You see, what I'm worried about is, like, why are we actually here in the court of appeals on this? In the sense that, on the one hand, I mean, this is partly Mr. Demiriak's problem. Maybe he could have made a second motion that was stronger. But if — I'm not sure what difference it makes whether we affirm without prejudice to his making such a motion or whether we kind of send it back and say, you know, really, look, there are serious things here that should be negotiated. Why are we — why is it inappropriate for — I don't know, are you the city or the state? Who runs this shop? It's a mix, Your Honor. The state runs the program.  I represent the state, Your Honor. Okay. And could you — is it within the authority of your agency to put a lift in on this stairway that we've got the picture of? It's a little bit of a mix of both, Your Honor. It would be the city who would — Okay. The two of you have to get together and do this. And, of course, the mayor and the governor will fight over it like the subways, and nobody's ever going to put a lift in here without the lawsuit. But why can't — why isn't there some — is there any doubt that this is inaccessible to a person in a wheelchair? Is there any dispute about the merits that at the end of the day this is something that should be fixed? Well, there aren't disputes that there are areas where steps prevent wheelchairs from going, but there is a dispute in terms of reasonable accommodations. There are other ways for plaintiffs to attend court proceedings. But that's where there's the one six-inch step and the possibility of a $300 ramp. Is that something that is not a reasonable accommodation? Or at least put it this way — I mean, I'm not going to suggest what the answer should be at the end of the day. Is it not perfectly reasonable to believe that there has been a showing that that is a situation that there are obvious, inexpensive fixes for? Right? Well, Your Honor, we think that there are fixes that we actually are willing to provide and have offered to provide plaintiff already, such as holding conferences in that one courtroom in the conference room adjacent to it, or to move any of plaintiff's proceedings as we have in the past. What about the library? The library is totally inaccessible, right? And the only allegation about the library, Your Honor, is that on that one particular date, plaintiff was looking for a place to quietly review his notes. And we've previously represented to this Court that we can find other places within the courthouse that are accessible for plaintiff to be able to quietly review. Isn't the library itself a public function that is open to the public and to attorneys who are working in the courthouse to use as a library? That's correct, Your Honor, but there's — But this gentleman can't. He hasn't alleged that he's tried to use it for any purpose other than on that one day to review his notes. And to be honest, we're willing to work with him to provide him reasonable accommodations to get materials from the library or have meaningful access to it that doesn't necessarily include installing ramps, which I'd like to point out. What would — you know, I mean, look, if it got to that, it seems to me maybe he should be saying something about how much one of these lift devices costs and whether that's a reasonable thing to require to be installed. But it's sort of — when I look at this, I think this is an easy fix. You know, we had to do it in an apartment building where I own an apartment. We were required to do it by one of you guys, the city or the state, and it was not a big deal. It was not all that costly, and it was done. I'm having a little trouble understanding what this fight is really about here. Well, two responses to that, Your Honor. First is that the installation of the ramp itself, it's not just a question of cost. It's a question of who is going to do it. There are unionized court officers and the like. There are questions whether that would make the stairs then inaccessible to people not in wheelchairs. And then there's also the point that we're willing to provide reasonable accommodations and access to the library facilities without necessarily going into the library. And beyond that, Your Honor — But isn't this exactly the sort of thing that ought to be resolved at a hearing? Because, you know, I think that if he hasn't done it yet, it's not going to be very hard for Mr. Demiriak to put in a few proposals that say you could do this for cheap, you could do that for cheap, and then we're going to be right back in this same position. And the question is, if he does that, I mean, suppose he did that. Suppose he said, as he said earlier, there's a — you know, you could put a $300 ramp on the one step in that situation. You could, for a couple of thousand dollars, put a lift on this stairway. Now, at that point, you would have to respond, right? That's correct, Your Honor, and I think this goes to — And you'd have to explain that the Court Officers Union won't let you put a lift in there? Well, no, there might be reasons why there's some burden to the governmental entities here, but to your broader point that you asked, plaintiff, why are we here? We kind of have the same question. We read the district court's order as not precluding a further application for preliminary relief. Let me jump on that question. Have you had conversations along the lines that Judge Lynch is effectively suggesting? Have you ever met with plaintiff, around the table, and discussed all of this? Not in person, but we have discussed this. What's the problem? What about the so-called mediation program of this court? Did you go through that? No, we did not, Your Honor. Why is that, I wonder? I don't know. That's a question for us, really, as to why this case comes to us without having been properly massaged by the mediation program. But we will check that, and the staff attorneys. Why don't we do this? At the risk of cutting you off in any way, why can't we simply defer action? I'm asking you, actually, whether we shouldn't just defer our decision pending a status report from you and your colleague from the city, telling us the result of the conversations that we encourage you to pursue. Does that seem reasonable to you? That seems reasonable, Your Honor. I would, of course, want to confer with the client and try with her. Oh, my God. It seems reasonable, Your Honor. Not that. The client. Let's ask your other lawyer friend here from the city corporation counsel's office. Absolutely. Thank you, Your Honor. Does this seem unreasonable to you, to meet with mediators of this court, either from the staff attorney's office or from our permanent mediation program? No, Your Honor. I just want to say a couple of points on that, just because it may be helpful for all of us here. I think that perhaps one of the reasons that this was not referred to a camp conference, and frankly I think every other appeal that I've handled before this court, which is probably five or six now, has gone to a camp conference. It may be because of, and I'm not criticizing my colleague in any way, of the choices Mr. Demiriak made here, which was I think the day after he filed a notice of appeal was to move this court as well for a preliminary injunction on basically the same papers plus maybe some amplification of those papers, which this court did deny, and this court also did deny his application for an expedited appeal, thereby suggesting that this litigation should maybe run its usual course here. And so that may be one reason that there was no camp conference. Because it hit the adjudication stage on the motion before there was an opportunity for that to happen. That's precisely right, Your Honor. And just to follow up on that, there is a difference, is there not, between the standard that would apply for this court to say, and I realize this is part of what Mr. Demiriak was at least initially asking this court to do in the appeal, for this court to say, there should be an injunction. We say install the ramps and so on and so forth. And what it would take to say the district court applied, itself applied the wrong standard by saying, you cannot get this kind of relief, period. And therefore there was error, and it should go back for having an answer from the city or state, supplementing the pleadings perhaps, and then maybe having a hearing. So the relief that is actually on the table in the appeal is different than the relief that the court denied, which was a request for a provisional order from this court in joining certain changes to be made in the structure of the court act. Your Honor, the relief sought from this court was narrower than what was sought from the district court. I think it was largely the same except for the request about the 120-day plan. Do you have any objection to mediation by appropriate court officers? I don't object, Your Honor. You have to report to your client. Right. I certainly would need to check with my client. I think that mediation generally in this case is appropriate. I don't know if it's really appropriate within just the scope of this appeal, though. Two of us are former district judges, and we're behaving like district judges. I mean, we don't want to see this kind of thing. I think mediation below makes much more sense, Your Honor. That's what I was going to ask. What's the status of affairs in the district court? I am in the appeals division at the city, and things are separated. I don't personally participate in discussions below, but based on information I've received from trial counsel, they do speak, and we have asked Mr. Dimirak what he wants here. Even apart from whether they speak or not, what is the status of proceedings? Or maybe- I'm sorry. I don't know if Mr. Dimirak could address that. I believe they're in the midst of discovery, Your Honor. Discovery? And is there a hearing date or trial date or any dispositive motions? That I'm not aware of the precise schedule, Your Honor. In the normal course, there would be discovery, and then there would be a hearing on the preliminary injunction, which is still pending, which plaintiffs described to us. Let's hear from plaintiff briefly whether he's agreeable to our suggestion. May I make one small point? Please, a small point. I think that the suggestion that's been made that a final injunctive relief is what's appropriate here, I think is also supported by even Mr. Dimirak's papers, where he relies almost entirely on cases dealing with final permanent injunctions. Thank you very much. We'll hear from plaintiff. Thank you. Do you have any objection to that course of action? No, thank you, Your Honors. I don't have any objection to engaging in mediation. Up until this point, the defendants, government defendants, have always suggested, look, what we want to provide you is the ability to relocate your court proceedings to an accessible courtroom. All right. Let me just cut you off for a moment. In suggesting this, what I'm suggesting to counsel for the other side is that at any such meeting, as far as we're concerned, you want to have your client there, whoever the buildings management persons are, or whoever runs the equivalent of the general services administration for the state or the city, all right? But they should both be there. It should be a meeting at which no one can say, oh, we don't know whether we can do this. It should be a meeting at which everyone present can say whether or not they cannot. And I'm going to suggest, if I may, that we get a status report. Today is the eighth, I would like, I think, a status report by no later than Monday, July 9th. You've got a month to work this out. And you will proceed through the clerk's office to get this meeting done expeditiously and bring your clients with you. Agreed? Yes, Your Honor. What about our friend here? Agreed? Agreed? Plaintiff? Yes, Your Honor. Thank you very much. We'll reserve decision and we are adjourned. Thank you. Court is adjourned.